UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:15-cv-20807

AT LAW AND IN ADMIRALTY

SHIRLEY RILEY,

    Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINES,

    Defendant.
_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, SHIRLEY RILEY, hereby sues the Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES, and files this Complaint, and alleges:

## THE PARTIES AND JURISDICTION

1. This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2. **THE PLAINTIFF**. The Plaintiff, SHIRLEY RILEY, is a permanent resident and citizen of Mobile County, AL.

3. **THE DEFENDANT**. The Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES (hereinafter referred to as CARNIVAL or Defendant or the cruise line), has its principal place of business in Miami, Florida.  CARNIVAL is incorporated outside the

1

state of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade County, Florida. At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4. **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state, and arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C.§ 1333, and is being filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. The Plaintiff, SHIRLEY RILEY, is sui juris and is a resident of Semmes, AL.

6. The Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES (hereinafter "Carnival"), is a foreign corporation incorporated in Panama, authorized to do business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade County, Florida.

7. **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, personally or through an agent, in the County and in the District in which this Complaint is filed:

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

    b. Had an office or agency in this state and/or county; and/or

    c. Engaged in substantial activity within this state; and/or

2

      d.      Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

8.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

9.      **DATE OF INCIDENT.**  This incident occurred on April 19, 2014.

10.      **LOCATION OF INCIDENT.**  This incident occurred on the vessel Carnival *Dream*, a ship in navigable water while the Plaintiff was a passenger aboard.  Accordingly, the Plaintiff's claims are governed by the general maritime law.  Specifically, the incident occurred on the polished stone floor within the entranceway or foyer of the casino on the Promenade Deck of the Carnival *Dream* cruise ship.

11.      **STATUS OF PLAINTIFF AS OF DATE AND TIME OF INCIDENT.**  At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel.

12.      **DESCRIPTION OF THE INCIDENT.**  Carnival operates more than 20 cruise ships.  On each such ship, there are between 2000 and 5000 passengers and over 1,500 crewmembers.  The passengers come and go and traverse the floors in and outside of the casinos on the ships all day and all night.  These passengers, as Carnival knows, are relaxed as they are on vacation.  And these casino customers carry drinks in and out of the casino, at times spilling those drinks on the casino entrance floor. Yet, Carnival has designed the flooring in and outside the casinos to be polished and reflective of the lights so that the floors and the overall appearance of the casinos is bright and eye catching to attract customers.  Those same polished, reflective floors

3

hide water and other liquids spilled on them. For these reasons, Carnival knows that it has to hire, train, and monitor employees who will inspect, locate, clean, and dry spills or cordon off and put warning signs of the spills before incidents happen. And Carnival has knowledge about many slips and falls on this and other ships on the same or similar floors or in the same or similar areas in the entrance to or outside the casino.

13. On the day of this incident onboard the Carnival Dream, there were insufficient personnel to keep the floors clean and dry and insufficient personnel to search and inspect for spills on these floors. Further, Carnival negligently trained, monitored, and directed its employees so that the employees did not sufficiently inspect for and locate spills and did not keep the floors clean, dry, and safe. Carnival negligently allowed a spill of water or similar liquid substance on a large area of the floor of the casino entrance for an extended period of time, despite a passenger's warnings and notice to the onboard cruise lines personnel about the existence of the puddle and spill.

14. Carnival, on the day of the incident allowed a spill of water or similar liquid substance to remain on a large area of the floor of the casino entrance for an extended period of time, despite a passenger's warnings and notice to the onboard cruise lines personnel about the existence of the puddle and spill. As a result of the cruise lines' negligence, passenger Shirley Riley walked onto the subject floor and slipped and fell. As a result of the slip and fall, Riley has suffered serious, debilitating, and permanent injuries including but not limited to a comminuted fracture of her right elbow requiring surgery for implantation of an artificial elbow joint.

## COUNT I
## NEGLIGENCE

15. The Plaintiff, hereby adopts and realleges each and every allegation in paragraphs 1 through 10, above.

16. **DUTIES OWED BY THE DEFENDANT**. The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 888 So. 2d 654 (Fla. 3d DCA 2004), 2004 A.M.C. 1913; citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); *The Moses Taylor*, 4 Wall. 411, 71 U.S. 411, 18 L. Ed. 397 (1866); *Carlisle v. Ulysses Line Ltd.*, 475 So. 2d 248 (Fla. 3d DCA 1985). The Defendant also owed a "duty to exercise reasonable care under the circumstances". See, *Harnesk vs. Carnival Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991). The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited*, *S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985). Vierling v. Celebrity Cruises, 339 F.3d 1309, 1319-20 (11th Cir. 2003)("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is nondelegable, and that even the 'slightest negligence' renders a carrier liable). The cruise line has a duty to provide safe ingress and egress to and from the ship. *Tittle v. Aldacosta*, 544 F.2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F.2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So.2d 853 (Fla. 3DCA 2004); and *Chan v. Society Expeditions*, 123 F.3d 1287 (9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe

5

means for passengers to board and disembark." *McLean v. CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES,* 2013 WL 1024257 (S.D.Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F 3rd 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES,* 2013 WL 1024257 (S.D.Fla.), citing *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1319 (11th Cir. 2003).

17. The Defendant breached those duties and was negligent by:

   a. Failing to keep the floor clean and dry to allow normal and safe foot traffic;

   b. Failing to clean or mop spills or leaks during hours when people were present on the premises;

   c. Failing to warn that the floor was slippery and hazardous and/or wet;

   d. Failing to provide a mat or other floor covering over the slippery floor to allow people who traverse the floor area to use at least a section of the floor;

   e. Failing to inspect for and to observe and clean water, lotion, oils, grease, and/or other foreign substances from the flooring;

   f. Observing that the flooring was slippery with foreign substances but failing to clean and dry the flooring;

   g. Failing to properly and reasonably train its employees in the proper methods of monitoring the activities of people in an area, cleaning and drying an area of flooring, and posting warning notices;

6

h. Failing to properly and reasonably monitor and control the activities of people in an area especially an area where Defendant knows is an area of high traffic and continuous problems;

i. Failing to properly and reasonably post warning notices in the area;

j. Failing to prevent distractions to invitees and failure to design a facility or an operation in the facility which does not have distractions to customers which would cause incidents;

k. Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one in this case;

l. Allowing an ongoing, recurring, continuous and/or repetitive problem to occur or to remain on the premises which would cause incidents or injuries;

m. Providing negligent maintenance to the area or to the premises;

n. Failing to otherwise maintain the area and the premises in a safe and reasonable manner;

o. Designing and building and not changing the deck which allowed substances and water to accumulate in an area for an unreasonable amount of time;

p. Allowing substances and water to accumulate on decks;

q. Failing to reasonably and properly train its employees to clean and dry areas where substances including water, oils, lotions, and grease accumulate and failing to train employees to warn passengers of such accumulation of water, oils, lotions, grease, and other substances by, for example, placing warning signs, or cones, or by cordoning off such areas;

    r.   Failing to provide mats or other floor covering over the wet, slippery deck to allow people who traverse the area to use at least a section of the area or deck;

    s.   Failing to comply with applicable standards, statutes, and/or regulations the violation of which is negligence per se and/or evidence of negligence; and

    t.   Failure to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

    u.   Failure to otherwise provide its passengers with a safe place to walk.

18.   The Defendant created a dangerous condition on the subject ship and allowed the dangerous condition to exist thereby causing an incident on the date referenced above in which the Plaintiff was severely injured.

19.   The Defendant either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

20.   The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the size and/or nature of the dangerous condition; and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

21. In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent maintenance; and/or (b) engaged in and was guilty of negligent methods of operations.

22. The negligent condition was created by the Defendant; and was known to the Defendant; and had existed for a sufficient length of time so that Defendant should have known of it; and was a continuous or repetitive problem thus giving notice to the Defendant.

23. The negligent condition occurred with sufficient regularity so as to be foreseeable by the Defendant, and should have been foreseeable by the Defendant.

24. The Defendant's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the

future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

>By: *s/John H. Hickey*
>John H. Hickey (FBN 305081)
>Hickey@hickeylawfirm.com
>Hickey Law Firm, P.A.
>1401 Brickell Avenue, Ste. 510
>Miami, Florida 33131-3504
>Telephone: (305) 371-8000
>Facsimile: (305) 371-3542
>*Attorneys for the Plaintiff*