UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

15-cv-20807-Martinez/Goodman

SHIRLEY RILEY,

Plaintiff,

vs.

CARNIVAL CORPORATION, d/b/a
CARNIVAL CRUISE LINES

Defendant.
_________________________________/

# CARNIVAL'S RESPONSE IN OPPOSITION TO PLAINTIFF'S CONSOLIDATED MOTION IN LIMINE

Defendant, Carnival Corporation, responds in opposition to Plaintiff's Consolidated Motion in Limine [ECF No. 44] as follows:

## Introduction

1. This is a cruise ship slip-and-fall case against Carnival wherein Plaintiff claims that the cruise line negligently allowed water to accumulate on the casino floor of the *Carnival Dream.*

2. Plaintiff sued Carnival notwithstanding that the two independent passengers who witnessed the incident clearly saw that there was no water on the floor and that Plaintiff's shoes simply got stuck on the tile, causing Plaintiff to fall forward. *See Deposition of John Ezell*[1] at 27, 80-83; *Deposition of Sandra Morton*[2] at 34-35.

---

[1] The transcript of the deposition of John Ezell is attached in its entirety as Exhibit C to Plaintiff's Consolidated Motion in Limine [ECF No. 44].
[2] The transcript of the deposition of Sandra Morton is attached in its entirety as Exhibit B to Plaintiff's Consolidated Motion in Limine [ECF No. 44].

3. The majority of Plaintiff's motion in limine is premature, raising relevancy objections concerning issues that, depending on other testimony adduced at trial, may or may not be relevant at the time the subject testimony is introduced.

4. Accordingly, with the exception of one sub-part, Carnival asks this Court to either deny or reserve ruling on each part of Plaintiff's motion, as specified below and for the reasons that follow.

**Carnival's Position and Incorporated Memorandum of Law Regarding Plaintiff's Motion**

1.A.: Testimony Regarding Sandra Morton's Disabled Son and Son's Father

Carnival agrees that the fact that Sandra Morton's son's father was killed when the son was five years old is not relevant. Counsel for Carnival is cognizant of the rules of evidence, has no intention of introducing this evidence, has never signaled to Plaintiff that it wanted to introduce the evidence, and could not agree to Part 1.A. of Plaintiff's motion only because it tied the death of Ms. Morton son's father in with the issue discussed below, which could potentially be relevant. Accordingly, Carnival has no objection to the portion of Part 1.A. of Plaintiff's motion concerning Ms. Morton's son's father.

With regard to Ms. Morton's son's disability, it is important to consider that Ms. Morton's vision, including her ability to spot water on a floor, is of utmost relevance in this litigation. Ms. Morton, who has no connection to either party in this lawsuit aside from being a Carnival cruise guest, heard a screeching sound and saw Plaintiff's feet get stuck in place on dry tile, causing her to fall forward. *Morton Deposition* at 34-35. Plaintiff bemoans that Ms. Morton testified about her disabled son, while selectively omitting the deposition passage showing *why* Ms. Morton so testified. Her ability to see water having been questioned, Ms. Morton was asked if she has seen water spilled elsewhere, specifically, her house. *Morton Deposition* at 89. Ms.


MASELARA
TRIAL LAWYERS

Morton replied that she had quite often because her son spills frequently. *Id.* Asked why her son spills frequently Ms. Morton, referenced his Cerebral Palsy and autism. *Id.*

Defendant does not intend to introduce Ms. Morton's son's disability into evidence in its case in chief, as, in a vacuum, it is concededly irrelevant. If Plaintiff attempts to diminish Ms. Morton's ability to see water on the floor and implies that her experiences seeing water on the floor are made up or exaggerated, however, whether or not her son has a condition that causes him to spill water frequently would become relevant. That is, under such circumstances, whether her son has Cerebral Palsy has at least *some* tendency to make a fact of consequence—that Ms. Morton frequently views water on floors, which increases the reliability of her testimony that she *can* see such water—"more or less probable than it would be without the evidence." Fed. R. Evid. 401. Because the condition may become relevant, Carnival respectfully asks the Court to reserve ruling on this portion of Part 1.A. of Plaintiff's motion in limine.

<u>1.B.: Testimony Regarding Fault</u>

There being no other reason why Ms. Morton could conceivably be biased against Ms. Riley, Plaintiff, on information and belief, will attempt to portray Ms. Morton as a "loyal Carnival customer" who would slant her testimony toward the cruise line in exchange for favorable treatment. Counsel for Plaintiff suggested in deposition questioning that Ms. Morton made a point of approaching a Carnival steward to explain what she saw even before she thoroughly checked the floor for water because she was trying to unduly protect Carnival from a lawsuit. *Morton Deposition* at pp. 78-79. Leaving aside the fact that she was two to four feet from the incident and had a perfect vantage point from which to determine whether there was water on the floor without conducting a full inspection, *id.* at 15, there is a perfectly reasonable explanation for Ms. Morton telling the steward what she saw: She wanted the truth about what

occurred to be known. *See id.* at 20 ("Q. …what was your – what was your intention and – and why did you talk to the – to the steward? A. Just because I'm an honest person and I felt like it wasn't – it was her own fault.").

Carnival agrees that lay witnesses normally should not be allowed to testify who was at fault in a slip-and-fall case. However, if Plaintiff, through evidence and/or argument, implies that Ms. Morton approached Carnival for a reason other than to tell the truth, Carnival should be allowed to introduce evidence of why she *actually* approached the steward. This evidence would be admitted not to prove that Ms. Riley was indeed at fault, but to rebut an attack on Ms. Morton's credibility. Because Ms. Morton's motivation for approaching Carnival personnel could—and, judging by questions in deposition, likely will—become relevant, Carnival respectfully asks the Court to reserve ruling on Part 1.B. of Plaintiff's motion in limine.

<u>2.A.: Alcoholic Beverages Consumed by Gautreaux</u>

For context, the Court should know that Ms. Gautreaux is an "independent" witness who supposedly *now* recalls there being water on the floor. She has a demonstrably poor memory, however, and has testified the opposite of Plaintiff as to multiple material issues. *See, e.g., Deposition of Dalise Gautreaux*[3] at 94-96 (Gautreaux testifying that Plaintiff slipped and fell "feet first, back down, on her butt," whereas the other witnesses, including Plaintiff herself, unequivocally state she fell forward; Gautreaux testifying that Plaintiff was wearing "sandals" with "little blue and green stones on 'em," whereas the other witnesses, including Plaintiff herself, unequivocally state that she was wearing closed-toed shoes).

---

[3] The transcript of the deposition of Dalise Gautreaux is attached in its entirety as Exhibit A to Plaintiff's Consolidated Motion in Limine [ECF No. 44].


MASELARA
TRIAL LAWYERS

Plaintiff's motion in limine regarding Ms. Gautreaux's drinking rests upon the faulty assumption that intoxicating liquors never affect memories formed a few hours prior to drinking. Alcohol affects memory by disrupting the organization and integration of information with pre-existing knowledge. Subsequent liquor consumption—such as the three roughly 20-plus-ounce margaritas, plus two shots of Patron tequila, that Ms. Gautreaux drank—could have diminished her ability to crystallize and accurately report what occurred in the hours leading up to her drinking. The timeline of her interactions with a bartender she calls "Kat," for example, could have been altered by the subsequent alcohol consumption, especially for someone who, like Gautreaux, is not a heavy drinker.

Alternatively, Gautreaux could have seen a puddle of water while intoxicated and, unable to determine while recovering the next day when she actually observed the puddle, assumed she made this observation before she was drunk. This would explain why Ms. Gautreaux never came forward with her observation that she observed a "puddle" in the casino until she was contacted by Plaintiff's counsel more than a year after the incident. *Gautreaux Deposition* at 124-147 (demonstrating that Ms. Gautreaux called Carnival following the cruise and lodged numerous complaints that were recorded in a written report, and that there is no record of a complaint regarding water on the casino floor despite Ms. Gautreaux claiming she made said complaint).

Because Ms. Gautreaux's consumption of alcohol has least *some* tendency to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401, *when* she consumed the liquor goes to the weight, not admissibility, of the evidence. If Carnival introduces such evidence, Plaintiff is free to call Ms. Gautreaux on re-direct examination at trial and ask her to testify that her memory that night was not affected by alcohol. Carnival respectfully requests that the Court deny Part 1.A. of Plaintiff's motion in limine.

2.B.: Ms. Gautreux's Testimony About Ms. Morton's and Mr. Ezells' View of Incident

Ms. Gautreaux did not sit in the exact seats occupied by Ms. Morton and Mr. Ezell at the time they saw Ms. Riley fall. Ms. Gautreaux demonstrated in deposition, however, that she could see where they were sitting and, through the ordinary use of her senses, could determine what view of the slip and fall Ms. Morton and Mr. Ezell had. Plaintiff's motion is akin to a claim that because a witness is one seat behind someone else in a movie theater, that witness can under no circumstances tell whether the person sitting in front of him or her had a view of the screen. Plaintiff is free establish that Ms. Gautreaux was not in the exact seat occupied by Ms. Morton and Mr. Ezell, a fact that goes to the weight, not admissibility, of the evidence Plaintiff seeks to exclude. Accordingly, Carnival respectfully requests that the Court deny Part 2.B. of Plaintiff's motion.

3. Collateral Source Benefits

Plaintiff's motion in limine concerning collateral source benefits must be denied because it sweeps too broadly. Carnival concedes that it will not seek to introduce evidence that Plaintiff's medical bills may have been paid by a collateral source simply for the purpose of establishing the collateral source, but any such evidence could be admissible for another purpose. For instance, Plaintiff may open the door for evidence that her medical bills were paid by a collateral source for purposes of impeachment. *See Barrera v. E.I. DuPont De Nemours & Co., Inc.*, 653 F.2d 915 (5th Cir. Unit A 1981) (defendant entitled to impeach plaintiff regarding lack of money for rehabilitation where Plaintiff received social security benefits). Further, Plaintiff does not identify any specific alleged "collateral source" that would apply to this case. Plaintiff

may deem a payment a "collateral source" when it is not one. Plaintiff's generalized motion must be denied.

Carnival fully intends, moreover, to ultimately seek a reduction or post-trial set-off of a jury verdict, if any, based on payments made for Plaintiff's medical expenses by collateral sources. *See Jones v. Royal Caribbean Cruises, Ltd.*, 2013 WL 8695361, *8 (S.D. Fla. Apr. 4, 2013) ("As a threshold matter, it is undisputed that Plaintiff is not entitled to a 'windfall' as a result of presenting evidence of the fully amount of his medical bills."); *Long v. Celebrity Cruises, Inc.*, 2013 WL 6046013, *1 (S.D. Fla. Apr. 2013) (cruise passenger jury verdict subject to appropriate post-trial set off for collateral sources). Carnival believes that Plaintiff's medical expenses were paid, in whole or in part, by a third-party provider. Courts are particularly wary of Plaintiffs' attempts to "double-dip" on damages where they never paid for their medical expenses in the first place. *See, e.g., Fla. Physician's Ins. Reciprocal v. Stanley*, 452 So. 2d 514, 515 (Fla. 1984).

Because payments made for Plaintiff's medical expenses may become relevant, Carnival respectfully requests that the court deny Part 3 of Plaintiff's motion as premature.

4. Pre-Existing Conditions of Plaintiff

Plaintiff notes that "Defendant has not come forward with any evidence that Ms. Riley suffered from a pre-existing medical condition to her right elbow." To the extent that is true, it is also irrelevant. As Plaintiff is aware, the main forum for "com[ing] forward with" evidence—trial—has not begun. Carnival is free, at trial, to admit otherwise admissible evidence of a pre-existing condition. If the parties could only admit evidence they have already "come forward with," there would be little point to having a trial. If Carnival is able to produce admissible evidence of a pre-existing condition—if, for example, Ms. Riley admits that she had a pre-

existing condition, or another witness testifies about statements made by Ms. Riley conceding she had a pre-existing condition, or Carnival's experts opine she had a pre-existing condition—Carnival's lawyers can argue such evidence as a matter of course. Plaintiff's motion is premature and should be denied at this time.

5. Statements in Guest Consultation Form

Plaintiff's argument is that Carnival "has…not been able to establish that the Plaintiff made the statements contained in the 'Guest Consultation Form' ". Plaintiff is, once again, 100 percent correct in her factual assertions, yet zero percent entitled to relief. Trial has not started. If Carnival establishes at trial that the statement at issue "was obtained from the person seeking treatment, or…from someone with a special relationship to the person seeking treatment," Plaintiff's argument fails. Because the Court does not yet know whether this contingency will occur, Carnival respectfully suggests that this Court deny Plaintiff's motion as premature and reserve ruling thereupon until the trial of this cause.

6. Jury Consultant

Carnival has already stipulated to this part of Plaintiff's motion.

**Request for Relief**

Based upon the foregoing, Carnival respectfully requests, with regard to Plaintiff's motion in limine, that this Court grant the portion of Part 1.A. regarding Ms. Morton's son's father, and reserve ruling as to the reaminder of Part 1.A.; reserve ruling as to Part 1.B.; reserve ruling as to Part 2.A.; deny Part 2.B.; deny Part 3; deny Part 4; reserve ruling as to Part 5; and grant Part 6, to which Carnival has already stipulated.

Respectfully submitted,

MASE LARA, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile: (305) 377-0080

By: *_/s/ Mason Kerns____________*
CURTIS J. MASE
Florida Bar No.: 0478083
cmase@maselara.com
SCOTT P. MEBANE
Florida Bar No.: 273030
smebane@maselara.com
MASON KERNS
Florida Bar No.: 91754
mkerns@maselara.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was e-filed with the Clerk to the Court via CM/ECF, and emailed to all counsel of record as identified in the Service List below, on November 19, 2015.

By: /s/ *Mason Kerns*
MASON KERNS

Service List

John H. Hickey, Esq.
Bjorg Eikland, Esq.
Hickley Law Firm, P.A.
1401 Brickell Avenue, Suite 510
Miami, Florida 33131
Tel: (305) 371-8000
Fax: (305) 371-3542
hickey@hickeylawfirm.com
beikeland@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
*Attorneys for Plaintiff*

18733/766



MASELARA
TRIAL LAWYERS